## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **COMMERCIAL FINANCIAL SERVICES,** | ) | |
| **INC.** | ) | |
| | ) | |
| **DOERNER, SAUNDERS, DANIEL, &** | ) | **Case No. 05-CV-739-TCK-SAJ** |
| **ANDERSON, LLP,** | ) | **consolidated with 06-CV-280** |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **STEPHEN A. JAY, Trustee of the** | ) | |
| **Unsecured Creditors Liquidating Trust;** | ) | |
| **and LLOYD T. WHITAKER, Trustee** | ) | |
| **of the ABS Liquidating Trust,** | ) | |
| | ) | |
| Appellees. | ) | |

### OPINION AND ORDER

Before the Court are the parties' objections (Docs. 72, 73, 75) to the Report and

Recommendation of United States Magistrate Judge Sam Joyner ("Report") (Doc. 60). This Court

referred to Judge Joyner an appeal of two orders ("Bankruptcy Orders") entered by United States

Bankruptcy Judge Dana Rasure in *In re: Commercial Financial Services, Inc.*, Case No. 98-05162-R

(Bankr. N.D. Okla.).[1]

Upon cross motions for summary judgment, the bankruptcy court held that appellant DSDA

violated Bankruptcy Rule 2014 ("Rule 2014") when it failed to disclose certain "connections" and

---

[1] This Opinion and Order affirms and adopts the general factual background set forth in Part I of the Report, which is incorporated herein by reference. Unless otherwise defined herein, this Opinion and Order uses the same defined terms as the Report.

that sanctions for such non-disclosure were warranted.  (*See* 2005 Order 35-50).  The court determined that the "most appropriate sanction" was to require DSDA "to make the estate whole, that is, to reimburse the estate for costs incurred as a result of DSDA's non-disclosure, including all reasonable and necessary fees and expenses incurred by the Trustees in the DSDA Contested Matter."  (*Id.* 57.)   After Trustees' submission of time records and the bankruptcy court's consideration of all relevant objections, the bankruptcy court imposed sanctions against DSDA in the total amount of $525,336.98.  (April 2006 Order 19-20.)[2]   DSDA appealed the Bankruptcy Orders, and this Court referred the appeal to Judge Joyner.

In the Report, Judge Joyner recommended: (1) affirming the bankruptcy court's determination that DSDA violated Rule 2014; and (2) reversing the sanction imposed upon DSDA because (a) such sanction required a finding of bad-faith conduct, and (b) DSDA did not engage in bad-faith conduct in committing the Rule 2014 violation.  Judge Joyner recommended vacating both Bankruptcy Orders and entering judgment in favor of DSDA.[3]

Both parties filed objections to the Report pursuant to Federal Rule of Civil Procedure 72(a) ("Rule 72(a)").  Trustees objected to: (1) the standard of review applied by Judge Joyner; (2) Judge Joyner's conclusion that bad faith is required for imposition of the bankruptcy court's selected sanction; (3) Judge Joyner's conclusion that the bankruptcy court failed to make findings tantamount

---

[2] Judgments were entered in favor of CFS Trust in the amount of $37,391.98; in favor of the Unsecured Creditors Liquidating Trustees ("UCLT") in the amount of $322,445.44; and in favor of the ABS Liquidating Trust ("ABS") in the amount of $137,719.40.  (*See id.* 19-21.)  These amounts reflect various adjustments made by the bankruptcy court as set forth in the April 2006 Order.  (*See id.* 19-21 nn. 24-29.)

[3] The Report recommends vacating the Bankruptcy Orders, although the Report affirms portions of the 2005 Order finding a Rule 2014 violation.

to bad faith by DSDA; and (4) Judge Joyner's own findings that DSDA did not engage in bad-faith conduct.  In the event this Court agrees that bad faith is required and that the bankruptcy court failed to make the necessary findings, Trustees urge the Court to remand for the bankruptcy court to make factual findings in the first instance.[4]

DSDA objected to: (1) Judge Joyner's conclusions regarding the relevant standards of review; (2) certain statements by Judge Joyner regarding the bad-faith issue being raised for the first time on appeal; and (3) Judge Joyner's affirmance of the bankruptcy court's finding of a Rule 2014 violation.  (*See* Doc. 72 at 3-4.)  DSDA further observed that Judge Joyner failed to reach its additional bases for reversing the sanction, including lack of notice.  (*See id.* at 4-5.)  DSDA did not object to the ultimate recommendation in the Report to vacate the Bankruptcy Orders.

## I.      Standard of Review of Magistrate's Report

This bankruptcy appeal was referred to Judge Joyner for a recommended disposition pursuant to 28 U.S.C. § 636(b)(3).  *See Derringer v. Chapel*, 279 Fed. Appx. 641, 644 (10th Cir. 2008) (unpublished) (holding that bankruptcy appeal is properly referred to magistrate judge pursuant to § 636(b)(3)).  As set forth in the Report, the parties' objections are governed by Rule 72(a), which provides that this Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to" and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(a).

---

[4] Trustees filed separate objections.  (*See* Objection of UCLT, Doc. 73 (twenty-five pages in length) and Objection of Trustee of ABS, Doc. 75 (eighty pages in length).)  Both trustees raise similar objections, and the Court has summarized and consolidated these objections as set forth above.  The Court questions Trustees' decision to file separate objections.

## II.       Standard of Review of Bankruptcy Orders[5]

Upon submission of cross motions for summary judgment, the bankruptcy court found that DSDA violated Rule 2014.  In reviewing a bankruptcy court order's grant of summary judgment, a district court "reviews de novo the bankruptcy court's decision granting appellee summary judgment." *In re Woodcock*, 144 F.3d 1340, 1342 (10th Cir. 1998).

Upon consideration of cross motions for summary judgment, the bankruptcy court also imposed a sanction against DSDA for the Rule 2014 violation.  In the specific context of a sanctions order entered by a bankruptcy court, the appellate court "reviews the bankruptcy court's decision to impose sanctions for abuse of discretion." *In re Nursery Land Dev't, Inc.*, 91 F.3d 1414, 1415 (10th Cir. 1996) (applying abuse of discretion standard to bankruptcy court's imposition of sanctions for bad-faith filing of Chapter 11 bankruptcy petition); *In re Cascade Energy & Metals Corp.*, 87 F.3d 1146, 1149 (10th Cir. 1996) ("The district court committed legal error by reviewing the sanctions order de novo rather than for an abuse of discretion.").  An abuse of discretion "is shown if the bankruptcy court based its ruling *on an erroneous view of the law* or on a clearly erroneous assessment of the evidence." *In re Nursery Land Dev't, Inc.*, 91 F.3d at 1415 (internal quotation omitted) (emphasis added); *see also F.A.C., Inc. v. Cooperativa De Seguros De Vida De Puerto Rico*, 563 F.3d 1, 6 (1st Cir. 2009) (same).

---

[5]  The Court rejects Part II of the Report and substitutes the following as the applicable standards of review.

### III.    Rule 2014 Violation

The Court affirms and adopts Part III.C of the Report and overrules DSDA's objections thereto.[6]  After conducting de novo review, this Court AFFIRMS the Bankruptcy Orders insofar as they grant summary judgment in favor of Trustees on the question of whether DSDA committed a Rule 2014 violation.  The Court does so for the reasons set forth in the Report.

### IV.    Legal Requirements for Fee-Shifting Sanction[7]

In the context of Rule 2014 violations, a bankruptcy court generally has "wide discretion in the selection of an appropriate remedy."  *In re Leslie Fay Cos.*, 175 B.R. 525, 538 (Bankr. S.D.N.Y. 1994).  As set forth in the 2005 Order, bankruptcy courts have imposed at least three types of sanctions for Rule 2014 violations: (1) disgorgement of the non-disclosing counsel's interim compensation; (2) denial of the non-disclosing counsel's requested compensation; and (3) requiring the non-disclosing party to pay for the costs of an investigation or other detriment to the estate caused by the failure to disclose.  (2005 Order 53-54 & nn.38-40 (citing cases).)

In this case, the bankruptcy court selected the third type of sanction – imposition of what it deemed the "costs of an investigation or other detriment to the estate caused by" DSDA's Rule 2014

---

[6]  The Court adopts all of Part III.C except the last sentence, which reads: "Thus, the question to be answered is whether DSDA's delayed disclosure has disrupted the case to the detriment of the debtor, creditors or the estate, accomplishing real damage, unperceived until incurable." (Report 22.) This sentence is not relevant to the Court's affirming the Rule 2014 violation.

[7]  The Court rejects Part III.A of the Report and substitutes the following as its analysis. Although the Court reaches the same conclusion as the Report, the Court does not wholly agree with the Report's framing of the issue or its reasoning.  Therefore, for purposes of clarity, the Court substitutes this section as its findings and conclusions on this issue.

violation.[8]  In the bankruptcy court's view, the "costs of detriment to the estate" included all attorney's fees and costs expended by Trustees in litigating all aspects of the DSDA Contested Matter, including (1) the lengthy and expensive Rule 1.7/Disqualification Phase (in which the Tenth Circuit ultimately determined that Trustees lacked standing to pursue DSDA's disqualification); and (2) the subsequent Rule 2014 Phase before the bankruptcy court (in which Trustees prevailed on summary judgment).[9]

In imposing such a sanction, the bankruptcy court shifted to DSDA certain attorney's fees incurred by Trustees while prosecuting the DSDA Contested Matter.[10]  The bankruptcy court did so without addressing the general rule prohibiting fee-shifting sanctions in the absence of bad-faith conduct or violation of a court order, when such sanctions are imposed solely pursuant to a court's inherent powers ("*Chambers* rule").  *See Chambers,* 501 U.S. at 45-46 (identifying two circumstances in which federal courts have inherent power to assess attorney's fees against counsel as sanctions: (1) "a court may assess attorney's fees as a sanction for the willful disobedience of a court order" ("contempt exception") and (2) "a court may assess attorney's fees when a party has

---

[8]  In this case, there were no "investigation" costs, *see, e.g., In re Leslie Fay*, 175 B.R. 525, 530 (Bankr. S.D.N.Y. 1994) (shifting to non-disclosing counsel $800,000 in fees incurred by independent examiner and his professionals hired by the estate to investigate non-disclosure), and the sanction falls into the "other detriment" category.

[9] The bankruptcy court imposed a "but for" causation standard and determined that DSDA's violation was the but-for cause of all attorney's fees and costs incurred by Trustees during both phases of the DSDA Contested Matter.  (April 2006 Order 9-10.)

[10]  The bankruptcy court did not engage in "substantive" fee shifting – that is, fee shifting to a "prevailing party" as part of a merits award.  Indeed, Trustees did not "prevail" in the Rule 1.7/Disqualification Phase.  Instead, the bankruptcy court shifted fees as a sanction for DSDA's Rule 2014 violation.  *See generally Chambers v. NASCO, Inc.*, 501 U.S. 32, 59 (1991) (Scalia, J., dissenting) (explaining difference between "substantive" fee shifting and fee shifting as a sanction).

acted in bad faith, vexatiously, wantonly, or for oppressive reasons" ("bad-faith exception").  Nor did the bankruptcy court make any express findings regarding the contempt exception or the bad-faith exception to the *Chambers* rule.

The primary legal issue presented by DSDA on appeal is whether the bankruptcy court's imposition of the fee-shifting sanction for the Rule 2014 violation, pursuant to its inherent power, was subject to the *Chambers* rule explained above, or whether the bankruptcy court had the authority to impose its selected sanction without reference to *Chambers* or the bad-faith exception.  The Court holds that the *Chambers* rule applies to the fee-shifting sanction imposed by the bankruptcy court under its inherent power, and that the sanction must therefore qualify for one of the *Chambers* exceptions in order to stand.[11]

First, the Court concludes that the bankruptcy court acted pursuant to its "inherent power" in imposing the fee-shifting sanction.   Rule 2014 itself contains no express sanctioning authority, and the Bankruptcy Orders are silent as to any statutory or other authority for imposing sanctions. The bankruptcy court did not, for example, cite Bankruptcy Rule 9011 or any other specific statute authorizing sanctions.[12]  In the absence of any reference to express authority, the Court concludes that the bankruptcy court sanctioned DSDA pursuant to its inherent powers.[13]

---

[11]  Neither party briefed or discussed the contempt exception, and the remainder of the Court's Order focuses solely on the bad-faith exception.

[12]  The bankruptcy court explained that 11 U.S.C. § 328(c), which authorizes sanctions for non-disclosures in some circumstances, was not applicable because DSDA's employment was not tainted by any actual conflicts.  (2005 Order 52 n.37.)  The bankruptcy court did not discuss Rule 9011 or whether it was applicable.

[13]  A bankruptcy court's inherent powers are derived from 11 U.S.C. § 105. This statute provides:

Second, the Court concludes that the *Chambers* rule applies any time a court relies upon its "inherent powers," rather than a more express congressional authorization, to impose a fee-shifting sanction.[14]   As explained in *Chambers*, there are "other mechanisms that permit a court to impose attorney's fees as a sanction for conduct which merely fails to meet a reasonableness standard." *Id.* at 47.   For example, "Rule 11 [and its bankruptcy equivalent] impose an objective standard of reasonable inquiry which does not mandate a finding of bad faith." *Id.*   However, in this case, the bankruptcy court relied solely upon its inherent powers without reference to any more specific rules. Because the bankruptcy court imposed a fee-shifting sanction solely pursuant to its inherent power, the *Chambers* rule was implicated.   *See Sally Beauty Co., Inc. v. Beautyco, Inc.*, 372 F.3d 1186, 1189 (10th Cir. 2004) ("As to bad faith, *Chambers* held that the *inherent powers* of the district court extend to awarding as a sanction attorneys' fees to the opposing party *when* a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons") (emphasis added); *In re Nichols*, 221 B.R. at 279 ("[W]hen invoking inherent powers to sanction independently or in conjunction with Fed. R.

---

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate *to enforce or implement court* orders or *rules*, or to prevent an abuse of process.

11 U.S.C. § 105 (emphasis added).   A bankruptcy court's exercise of § 105 powers is equivalent to the exercise of an Article III court's "inherent powers recognized by the Supreme Court in *Chambers.*"   *See In re Courtesy Inns, Ltd. v . Bank of Santa Fe*, 40 F.3d 1084, 1089 (10th Cir. 1994) (holding that § 105 is "intended to imbue the bankruptcy courts with the inherent power recognized by the Supreme Court in *Chambers*"); *see also In re Lacy*, 353 B.R. 264, 273 (Bankr. D. Colo. 2006) (explaining that a bankruptcy court's inherent power to sanction arises from § 105); *In re Nichols*; 221 B.R. 275, 279 (Bankr. N.D. 1998) (same).

[14]   Because it is not required for disposition of this appeal, the Court does not reach the question of whether inherent-powers sanctions other than fee shifting require bad-faith conduct.

8

Bankr. P. 9011, courts have generally found subjective bad faith and vexatious, wanton and oppressive conduct."); *see also In re Lacy*, 353 B.R. at 273-74 (citing *Chambers* rule and bad-faith requirement before imposing sanctions for pursuant to inherent power). *See generally Zambrano v. City of Tustin*, 885 F.2d 1473, 1482 n.27 (9th Cir. 1989) (explaining that, unlike the decision to impose monetary fines as a sanction, "the decision of when to courts may shift fees generally lies with Congress" and that "[t]here is . . . good historical reason to require a more explicit Congressional delegation in the fees context").

Third, the Court concludes that the *Chambers* rule applies even when the sanctionable conduct is not undertaken for a client's benefit. Trustees' principal legal argument is that *Chambers* has no application because DSDA was sanctioned for violation of a bankruptcy disclosure rule aimed at promoting candor to the court, rather than for conduct undertaken for its client's benefit. Trustees rely extensively upon *United States v. Seltzer*, 227 F.3d 36 (2d Cir. 2000). In *Seltzer*, a district court exercised its inherent power to impose a $350 fine on an attorney as a sanction for late arrival to announcement of a jury verdict. The attorney argued on appeal that the sanction must be reversed because the district court failed to make a finding of bad faith. The court in *Seltzer* affirmed the sanction in absence of bad-faith findings and held:

> Our opinion today therefore is intended to clarify the circumstances under which a district court has the power to sanction pursuant to its inherent authority without a finding of bad faith. *When a district court invokes its inherent power to impose attorney's fees or to punish behavior by an attorney in the actions that led to the lawsuit or conduct of the litigation, which actions are taken on behalf of a client, the district court must make an explicit finding of bad faith. But, when the district court invokes its inherent power to sanction misconduct by an attorney that involves that attorney's violation of a court order or other misconduct that is not undertaken for the client's benefit, the district court need not find bad faith before imposing a sanction under its inherent power.*

*Id.* at 41-42 (internal quotations, citations, and alterations omitted) (emphasis added).

9

The court in *Seltzer* (1) drew a distinction between what this Court deems "advocacy misconduct" and "non-advocacy misconduct,"[15] and (2) held that bad faith is not required when a court imposes a sanction for non-advocacy misconduct, even when the court acts solely pursuant to its inherent powers.  What is not clear from *Seltzer* is whether this distinction remains relevant when the sanction imposed for the non-advocacy misconduct is an award of opposing counsel's attorney's fees.[16]

The parties to this appeal advance two different interpretations of the italicized language above.  DSDA's position assumes that the phrase beginning with "in the actions . . ." only modifies "to punish behavior by an attorney" and does not also modify "to impose attorney's fees," such that the *Seltzer* holding essentially reads:  "When a district court invokes its inherent power [either (1) to impose attorney's fees[,] or [(2) to punish behavior by an attorney in the actions that led to the lawsuit or conduct of the litigation, which actions are taken on behalf of a client, the district court must make an explicit finding of bad faith."  In stark contrast, Trustees' position assumes that the phrase beginning with "in the actions . . ." modifies both possible actions listed in the sentence (imposing attorney's fees or otherwise punishing behavior by an attorney).

Were the Court to adopt Trustees' reading of *Seltzer*, *Seltzer* would impermissibly run afoul of *Chambers* by dispensing with the bad-faith requirement in cases involving an "inherent power"

---

[15]  The term "litigation conduct," used by Trustees in its discussion of *Seltzer*, is less precise because non-advocacy misconduct can nonetheless take place during "litigation."  An example of "non-litigation" bad-faith conduct is a bad-faith breach of contract occurring before the lawsuit was filed.  *See Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 768 (10th Cir. 1997) (bad faith in the acts giving rise to the substantive claim does not fall within the bad-faith exception because it was not "abusive of the judicial process").

[16]  As explained above, the sanction imposed in *Seltzer* was a fine and not a fee-shifting sanction.

fee-shifting sanction. *Chambers* does not make any advocacy/non-advocacy misconduct distinction. In fact, *Chambers* discusses what could potentially be "non-advocacy" examples of bad-faith conduct, such as when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Chambers*, 501 U.S. at 46. In such an instance, according to the Supreme Court, the "position of sanctions transcends a court's equitable powers concerning relations between the parties and reaches a court's inherent power to police itself." *Id. Chambers*, therefore, seems to contemplate a fee-shifting sanction awarded by a court solely for the purpose of "policing itself" – *e.g.*, in this case, to police an attorney's violation of Rule 2014's disclosure obligations.

Further, in discussing *Chambers* and the bad-faith exception, the Tenth Circuit has acknowledged that there are two forms of bad faith that may warrant fee shifting: (1) "bad faith occurring *during the course of litigation that is abusive of the judicial process*"; and (2) "bad faith in bringing an action or in causing an action to be brought." *See Towerridge, Inc.*, 111 F.3d at 768 (emphasis added). It seems that non-advocacy misconduct, such as failing to comply with disclosure rules, can occur "during the course of litigation" and be "abusive of the judicial process." Therefore, the Tenth Circuit in *Towerridge* at least implied that *Chambers* would apply to such situation and that bad faith is required in order to shift fees.[17]

---

[17] The Eighth Circuit has dispensed with the bad-faith requirement for certain types of "inherent power" sanctions but was careful to distinguish cases involving fee-shifting sanctions. *See Harlan v. Lewis*, 982 F.2d 1255, 1260 (8th Cir. 1993) (affirming district court's imposition of a $5000 monetary sanction for counsel's violation of rules of professional conduct, in absence of bad-faith finding) (explaining that, under *Chambers*, a district court assessing attorney's fees against a party or its counsel would require bad faith).

Alternatively, assuming *Seltzer*'s dispensing of the bad-faith requirement for non-advocacy misconduct extends to fee-shifting sanctions, the Court views it as a significant departure from *Chambers* and declines to follow it in the absence of clear Tenth Circuit authority.  Instead, the Court follows those cases adhering to the bad-faith requirement even in cases involving non-advocacy misconduct.  *See, e.g., Zambrano v. City of Tustin*, 885 F.2d 1473, 1481 (9th Cir. 1989) (district court imposed fee-shifting sanction pursuant to its inherent powers based on attorneys' failure to comply with local rules requiring admission to the district court bar) (appellate court reversed because attorneys "did not act in bad faith or engage in willful misconduct when they failed to apply for admission"); *see also United States v. Wallace*, 964 F.2d 1214, 1219 (D.C. Cir. 1992) (district court imposed jury-cost sanction pursuant to its inherent powers when attorney engaged in non-advocacy misconduct of failing to subpoena friendly witnesses, thereby multiplying proceedings) (appellate court reversed because "it is settled that a finding of bad faith is required for sanctions under the court's inherent powers" and attorney's conduct reached only level of negligence); *In re Lacy*, 353 B.R. at 273-74 (bankruptcy court imposed sanctions against counsel pursuant to its inherent powers for violation of bankruptcy rules only after citing *Chambers* and the bad-faith exception).

The bankruptcy court applied an incorrect legal standard in imposing sanctions against DSDA.  Specifically, the bankruptcy court cited its "wide discretion" to sanction violations of Rule 2014, *see In re Leslie Fay Cos.*, 175 B.R. at 538, but failed to acknowledge the limitations upon this

discretion when the selected sanction is fee shifting pursuant to a court's inherent powers, *see Chambers*, 501 U.S. at 45-46.[18]

## V.     Legal Standard for Finding of Bad-Faith Conduct[19]

Having decided that the sanctions imposed are indeed subject to *Chambers*, and therefore must be supported by certain findings outlined by the Supreme Court, the question is whether the Bankruptcy Orders are sufficiently supported by such findings.  The general legal standard is that "a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45-46 (internal quotations omitted); *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1223 (10th Cir. 2006) ("[T]he inquiry [for inherent-power sanctions] is whether a person has abused the judicial process by acting in bad faith, vexatiously, wantonly, or for oppressive reasons.") (internal quotations omitted).

In cases involving a court's use of inherent powers to impose sanctions for "maintaining" a claim in bad faith, the standard is whether a claim is "entirely without color and asserted wantonly, for purposes of harassment[,] delay, or for other improper purpose." *San Juan Products, Inc. v. San Juan Pools of Kan.*, 849 F.2d 468, 476 (10th Cir. 1988) (affirming fee-shifting sanction where the plaintiff instituted and conducted a "wholly frivolous" action for the sole reason of intimidating the defendants).  However, this standard is not a precise fit in this case because DSDA, the sanctioned

---

[18]   To the extent bankruptcy courts have imposed fee-shifting sanctions pursuant to their inherent powers, in the absence of conduct that qualifies for an exception to the *Chambers* rule, the Court believes they were in error.  *See, e.g., In re Imperial Corp. of Am.,* 181 B.R. 501, 508 (Bankr. S.D. Cal. 1995) (imposing fee-shifting sanction without invoking a *Chambers* exception but observing its "distinct impression" that the failure to disclose was "not inadvertent"); *In re Leslie Fay Cos.*, 175 B.R. 525, 538 (Bankr. S.D.N.Y. 1994) (imposing fee-shifting sanction without invoking a *Chambers* exception).

[19]   The Court rejects Part III.D of the Report and substitutes the following as its analysis.

party, did not institute or maintain either phase of the DSDA Contested Matter – the matter for which fees were shifted.

In cases involving a court's use of inherent powers to impose a sanction for violation of court rules or otherwise abusing the judicial process, which are more instructive in this case, courts have inquired whether counsel "act[ed] in bad faith or engage[d] in willful misconduct" in violating the relevant rule. *See Zambrano*, 885 F.2d at 1484 ("We conclude that appellants did not act in bad faith or engage in willful misconduct when they failed to apply for admission to the Central District bar."); *see also Wallace*, 964 F.2d at 1219 (explaining that, in order to impose "inherent powers" sanction for failing to subpoena friendly witnesses, court would have had to make finding of "intent unreasonably to delay the proceedings"); *Harlan*, 982 F.2d at 1260 (concluding that findings of an "intentional effort to obstruct the flow" of discovery and violation of ethical rules were sufficient to constitute oppressive, vexatious, or bad-faith conduct, assuming such a finding was indeed required); *Dehning v. Child Dev. Servs. of Fremont County*, 261 Fed. Appx. 75, 79 (10th Cir. 2008) (unpublished) (affirming "inherent powers" fee-shifting sanction where record supported district court's factual finding that party's conduct in refusing to consummate a settlement agreement was "arbitrary, willful, and without cause"). In the specific context of violating bankruptcy disclosure rules, at least one bankruptcy court imposed inherent-power sanctions because counsel attempted to "covertly circumvent" the rules. *In re Lacy*, 353 B.R. at 274. *Cf. In re Taylor*, 407 B.R. 618, 650 (Bankr. E.D. Pa. 2009) (declining to impose inherent-powers sanction because mortgagees' process for prosecuting bankruptcy claims, although "questionable," did not "rise to the level of recklessness or bad faith"). With these standards in mind, the Court has carefully reviewed the Bankruptcy Orders to determine if the fee-shifting sanction is supported.

14

## VI.    Bankruptcy Court's Findings Relevant to Bad Faith

The Court concludes that the bankruptcy court did not make the type of findings necessary to impose a fee-shifting sanction pursuant to its inherent power.  First, the bankruptcy court did not use the words "bad faith," "vexatious," "wanton," or "oppressive" to describe DSDA's violation of Rule 2014.  Thus, there are no explicit findings by the bankruptcy court that support the sanction.

Second, the bankruptcy court did not make findings "tantamount" to bad faith, vexatious, oppressive, or wanton conduct.[20]  In describing DSDA's misconduct, the 2005 Order states that DSDA's eventual Rule 2014 disclosure "was *tardy* and resulted in an avoidable expenditure of resources by the estate."  (2005 Order 49 (emphasis added).)  The court concluded that the disclosure was "tardy" because: (1) DSDA had "fore-knowledge that the Trustees objected to the concurrent representation of Anderson and [the debtor]"; (2) DSDA failed to disclose, at least in part, based on a conflict waiver that was of "questionable efficacy" and that had not been approved by the bankruptcy court; and (3) DSDA created a "jurisdictional nightmare" when it commenced representation of Anderson prior to disclosing the potential conflict to the bankruptcy court.  (*Id.* 48-49.)  In addition, the court discussed DSDA's procurement of a conflict waiver from the debtor just four months after the Trustees had expressed disapproval of the dual representation of Anderson and the debtor.  (*Id.* 49-50.)  The court described this as a "controversial transaction of which the Trustees and the Court had a right to be informed."  (*Id.* 50.)  The court further stated that DSDA took a "dismissive and hypertechnical view of its duties as a professional employed by the estate,"

---

[20]  As conceded by both parties, use of certain words is not required, and the sanction may stand if the bankruptcy court made factual findings of conduct that is "tantamount to bad faith." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108 (9th Cir. 2002); *In re Remsat, Ltd.*, 212 F.3d 1039, 1047 (7th Cir. 2000) ("Reversing an order imposing sanctions . . . simply because the sanctioning court did not use the words 'bad faith' would needlessly elevate form over substance.").

and cited a case discussing a "pattern of less than candid disclosure" as relevant to the court's determination of an appropriate sanction.  (*Id.*)

In the section of the April 2006 Order addressing DSDA's objection to shifting any fees incurred by Trustees during the Rule 1.7/Disqualification Phase, the bankruptcy court stated:

> Accordingly, the Court concludes that the services rendered by the Trustees' professionals in connection with the 'Rule 1.7/disqualification' issue were reasonable and necessary . . . given [1] the *calculated tardiness* of DSDA's disclosure of its acquisition of the conflict waiver from [debtor], [2] DSDA's commencement of representation of Anderson . . . prior to disclosure of the conflict waiver, [3] the posture of the relationship of this bankruptcy case and the CFS-Related Securities Fraud Litigation, and [4] this Court's decision to recommend that the Rule 1.7 issue be withdrawn by the District Court over the objections of the Trustees.

(April 2006 Order 10.)

Taken together and read as a whole, the Bankruptcy Orders do not make clear findings of the type of bad-faith conduct necessary to support the fee-shifting sanction.  Clearly, the bankruptcy court (1) disapproved of DSDA's decision not to immediately disclose the conflict waiver, and (2) found that the DSDA Contested Matter could have been avoided upon timely disclosure pursuant to Rule 2014.  However, the record does not adequately reveal the bankruptcy court's conviction that DSDA acted in bad faith or engaged in any willful misconduct.  Although the word "calculated" in the April 2006 Order does imply some degree of intentional behavior by DSDA, this statement is in the context of overruling DSDA's causation objection[21] and is not part of an explicit discussion

_____

[21] DSDA objected to shifting fees incurred by Trustees during the Rule 1.7 Disqualification Phase, arguing that the Rule 2014 violation did not cause such fees to be incurred.  The bankruptcy court disagreed.  (April 2006 Order 9-10 ("[I]f DSDA disclosed the conflict waiver transaction before entering an appearance in the CFS-Related Securities Fraud Litigation, the Rule 1.7 issue would not have been withdrawn by the District Court and the Trustees' standing to seek disqualification of DSDA in the CFS-Related Securities Fraud Litigation would not have been an issue, nor would an appeal have been necessary.").)

regarding DSDA's level of culpability.  In addition, the use of the term "calculation" is an isolated reference in over seventy pages of analysis contained in the Bankruptcy Orders.  Further, the bankruptcy court did not make any relevant culpability findings in concluding that a Rule 2014 violation occurred because it correctly determined that bad-faith intent is not required for a violation. (2005 Order 23 & n.16.)

On this record, the Court is unable to conclusively determine if the bankruptcy court perceived DSDA's conduct as bad-faith conduct.  Therefore, "this is not a case in which bad faith is so patent that [the court] can infer the necessary findings."  *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (district court used words like "frivolous," "outrageous," "inexcusable," and "appalled") (appellate court "appreciate[d] the frustration the [district] court felt, [but could not] glean from the record whether this outrage stemmed from a belief that [the sanctioned party] acted in bad faith"); *cf. Harlan*, 982 F.2d at 1260 (affirming imposition of sanctions in absence of explicit bad-faith findings "when the meaning of the district judge [was] clear").  Therefore, the Court cannot affirm the sanction based on the findings and conclusions made in the Bankruptcy Orders.

## VII.    DSDA's Alleged Waiver of Appellate Issue

In their briefs responding to DSDA's appeal, Trustees contend that DSDA did not preserve the principal issue presented by DSDA on appeal – namely, whether the imposition of a fee-shifting sanction pursuant to the Court's inherent power required a finding of bad faith.  The Report concludes that DSDA did not waive the issue (*see* Report, Part III.B, 16-18), and Trustees did not object to this aspect of the Report.  Nonetheless, even absent objection, the Court need not adopt reasoning of the Report with which it disagrees.  *See* Fed. R. Civ. P. 72(a).

The Court concurs with the Report's conclusion but does not concur with all aspects of the Report's reasoning.  Specifically, as explained *infra* Part VII, the Court disagrees with the Report's conclusion that "[h]ad the *Chambers* case and the explicit bad faith requirement been argued to the trial judge, the findings of the trial judge could not be more explicit in outlining the improper conduct."  (Report 17.)  Accordingly, the Court substitutes the following as its analysis.

In reviewing the Bankruptcy Orders, this Court sits as an appellate court.  As a general rule, an appellate court does not consider issues that were not raised in the lower court.  *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 720 (10th Cir. 1993).   Reasons for this rule include: (1) the need for finality in litigation; (2) avoidance of frequent remand for additional evidence gathering; and (3) the unfairness of allowing a party to raise a new issue on appeal when that party invited the alleged error in the lower court.  *Id.* at 721.  Courts are particularly "insistent on this rule in cases where the theory advanced on appeal was in direct contradiction to the theory pursued in the trial court."  *Id.* With respect to the specificity required to preserve an issue for appeal, the Tenth Circuit has stated that "vague, arguable references" in the lower court do not preserve the issue on appeal.  *Id.*

These rules are somewhat difficult to apply here.  In the motion for sanctions presented to the bankruptcy court, Trustees moved the court to impose a sanction in the amount of their fees and costs incurred in the DSDA Contested Matter.  (*See* 2005 Order 51.)  Such a sanction required Trustees to prove that the sanctionable conduct qualified for an exception in *Chambers*, yet Trustees did not cite *Chambers* or any bad-faith requirement for imposition of this particular sanction.[22]  In defending the motion for sanctions, DSDA failed to raise or discuss *Chambers*.  As observed by Judge Joyner in the Report, DSDA did not know, prior to the 2005 Order, which of the sanctions

_____

[22]  Trustees also moved for several other types of sanctions.

18

requested would be imposed or the degree to which bad faith would be relevant. However, following the 2005 Order, DSDA was given further opportunity to object to the fee-shifting sanction and still failed to raise *Chambers*.[23]   In sum, Trustees failed to initially set forth the legal requirements of a fee-shifting sanction, DSDA failed to defend the sanctions motion or object to the selected fee-shifting sanction on the basis of *Chambers*, and the bankruptcy court failed to *sua sponte* address *Chambers*.

In this situation, the Court is persuaded that the legal question addressed in this Opinion and Order is ripe for appeal. First, the Court finds that DSDA adequately preserved the issue by defending the motion on grounds of its good-faith belief that disclosure was not required. Although *Chambers* was not directly raised by DSDA, it defended the sanctions motion, at least in part, on grounds that it had a good-faith belief that disclosure was not required and that it did not willfully violate Rule 2014. This is sufficient to preserve the issue for appeal. *See Graphic Commc's Int'l Union, Local 31-N v. Quebecor Printing (USA) Corp.*, 221 F. Supp. 2d 609, 610-11 (D. Md. 2002) (finding that, although defendant did not specifically invoke a statutory good-faith defense, issue was preserved for appeal because the defendant "consistently asserted its good faith compliance" throughout the litigation). This is certainly not a case where the theory asserted by DSDA on appeal (fee-shifting sanction was illegally imposed due to *Chambers* bad-faith requirement) is in direct contradiction to the defense presented to the bankruptcy court (sanction not warranted because, if committed at all, Rule 2014 violation was committed in good faith).

---

[23]   DSDA's contention that its objections were necessarily limited to the "reasonableness" of the amount of Trustees' fees is unpersuasive. Had DSDA raised *Chambers* at any point prior to entry of final judgment or moved the court to reconsider in light of *Chambers*, the bankruptcy court would have been obligated to at least consider whether its sanction was legally erroneous.

Second, DSDA likely did not have to "preserve" this appellate issue.  Trustees had the burden of proving bad faith to support the fee-shifting sanction ultimately imposed. *See F.A.C., Inc.*, 563 F.3d at 3 (holding the moving party had the burden of showing that sanctioned party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons"); *Rogler v. Standard Ins. Co.*, 30 Fed. Appx. 909, 914 (10th Cir. 2002) (unpublished) (noting that district court denied request for sanctions pursuant to its inherent power because movant did not meet burden of proving bad faith).  Because Trustees had the burden of proof, DSDA's failure to raise *Chambers* and the bad-faith exception does not result in waiver.  *See Syngenta Seeds, Inc. v. Delta Cotton Co-op., Inc.*, 457 F.3d 1269, 1276 (Fed. Cir. 2006) (finding that party did not waive argument related to knowledge requirements of a statute because it "did not bear the burden of establishing the element of knowledge at trial").  This is simply not a case in which DSDA can be said to have "invited" the legal error in the lower court.  Trustees, the party requesting sanctions, are at least equally responsible for the legal error that occurred.

Finally, even assuming preservation was necessary and waiver occurred, the Court finds this to be a proper case to invoke the exception to the preservation rule because waiver results in injustice.  *See Lyons*, 994 F.2d at 721 (explaining that appellate court may be justified in resolving an issue not passed on below where injustice might otherwise result).  The Supreme Court and Tenth Circuit have held that fee-shifting sanctions imposed pursuant to a court's inherent powers must be supported by specific factual findings.  The proper legal standard was not applied, and such findings were not made by the bankruptcy court.  The result was a fee-shifting sanction against DSDA totaling over $500,000.  In this situation, the Court finds that DSDA's failure to specifically raise the *Chambers* decision in the lower court does not prevent appellate review of the legal issue.

**VII.     Procedural Disposition of Remaining Issues**

After reaching the same conclusions as this Court, albeit under different reasoning, Judge Joyner proceeded to determine, based on the facts contained in the appellate record and the Bankruptcy Orders, that DSDA did not engage in any bad-faith conduct.[24]   Judge Joyner recommended vacating the Bankruptcy Orders without remanding for further proceedings.  As acknowledged in the Report, the recommendation was therefore to find a "violation of Rule 2014 with no sanction for that violation."  (Report 30.)

Contrary to Judge Joyner, the Court concludes that it must remand this matter to the bankruptcy court for further proceedings consistent with this Opinion and Order.  When a district courts reviews an order of the bankruptcy court, the district court "functions as an appellate court." *Taylor v. I.R.S.*, 69 F.3d 411, 417 (10th Cir. 1995).  As such, the district court:

> may not make its own independent factual findings. If the bankruptcy court's factual findings *are silent or ambiguous as to an outcome determinative factual question,* the district court may not engage in its own factfinding but, instead, must remand the case to the bankruptcy court for the necessary factual determination.

*Id.* (emphasis added).  As explained above, the Bankruptcy Orders are ambiguous on the bad-faith question because an incorrect legal standard was applied.  The Bankruptcy Orders certainly do not make clear, unmistakable factual findings as to whether DSDA's conduct did or did not rise to the level of bad faith.  Factual findings on the issue of bad faith are outcome determinative as to the appellate question – whether the fee-shifting sanction may stand.  Therefore, if bad-faith findings

---

[24]  Judge Joyner concluded, based on his review of the record and the Bankruptcy Orders: (1) "DSDA's reasons for the delayed disclosure are sufficiently colorable to avoid any finding of bad faith or improper purpose"; (2) "the conflict disclosed was waived and would not have disqualified DSDA"; and (3) "the conduct  of DSDA [was not] sufficiently vexatious or oppressive to justify any sanction." (Report 30.)

are made at all,[25] they must be made in the first instance by the bankruptcy court. *See Taylor*, 69 F.3d at 417 (holding that "district court erred by concluding Plaintiff willfully failed to pay over taxes to the government in the absence of fact findings on this issue from the bankruptcy court" and where the "bankruptcy court did not reach the issue of willfulness and therefore made no findings on the issue"). Only then can this Court perform the necessary review of such factual findings to determine if they adequately support the sanction imposed.

Also counseling in favor of remand is that Trustees requested several types of sanctions in their motion. This Court has reversed the bankruptcy court's selected sanction but has affirmed the Rule 2014 violation. In this situation, the bankruptcy court may consider the imposition of other sanctions, so long as they are supported by the law and facts. *See, e.g., Wouters v. Martin County, Fla.*, 9 F.3d 924, 934 (11th Cir. 1993) (reversal of district court's selected sanction of dismissal with prejudice did not "deprive the district court of the authority to impose lesser sanctions" or "disciplinary action" upon remand if "appropriate under the established law and the facts of this case"); *F.A.C., Inc.*, 563 F.3d at 8 (reversing sanction and remanding to lower court to determine if sanction was still supported and "imply[ing] no view one way or the other" whether such an order could stand). Were the Court to vacate the Bankruptcy Orders without remanding, the Court would deprive the bankruptcy court of the opportunity to impose a legal sanction for the Rule 2014 violation.[26]

---

[25] Upon remand, the bankruptcy court may elect not to make findings of bad-faith conduct. This underscores the error in the Report's reaching the bad-faith question.

[26] Because not presented on appeal, the Court makes no findings as to the legal requirements for the other requested sanctions.

The Court is not pleased that its decision may result in further litigation of these issues and further accumulation of Trustees' attorney's fees. However, the Court does not view this as a case in which "the cause of the orderly administration of justice is best served by simply vacating the [sanctions] order," s*ee, e.g., Zambrano*, 885 F.2d at 1484 (9th Cir. 1989), because vacating the Bankruptcy Orders strips the bankruptcy court of any opportunity to attempt fashioning a legal sanction for the Rule 2014 violation. In addition, although the parties presented cross motions for summary judgment, it is not entirely "clear [] what the [bad-faith] facts are," such that the parties "had a fair opportunity to dispute them." *See Schmidt v. Farm Credit Servs.*, 977 F.2d 511, 513 n.3 (10th Cir. 1992). This is because *Chambers* and the bad-faith exception were not directly discussed below. Therefore, the Court rejects the Report's recommendation to vacate the Bankruptcy Orders and will instead remand the matter for further proceedings consistent with this Opinion and Order.

## VIII.   Conclusion

Upon de novo review of the Report (Doc. 60), the Court ACCEPTS it in part, REJECTS it in part, and MODIFIES it in accordance with this Opinion and Order. The parties' objections to the Report (Docs. 72, 73, 75) are SUSTAINED in part and OVERRULED in part.

Any objections to Part I of the Report are OVERRULED, and Part I of the Report is AFFIRMED and ADOPTED as the order of the Court. Any objections to Part III.C of the Report are OVERRULED, and Part III.C is AFFIRMED and ADOPTED as the order of the Court. Any objections to Part II of the Report are SUSTAINED, and Parts I and II of this Order set forth the Court's reasoning and conclusions. Any objections to Part III.A, B, and D of the Report are SUSTAINED, and Parts IV-VII of this Order set forth the Court's reasoning and conclusions. Any

objections to Part IV of the Report are SUSTAINED, and this Court's conclusions are as set forth in this Opinion and Order [27]

Accordingly, the Bankruptcy Orders are AFFIRMED in their finding of a Rule 2014 violation. The Bankruptcy Orders are REVERSED insofar as they impose a fee-shifting sanction pursuant to the Court's inherent power. The matter is hereby REMANDED to the bankruptcy court for proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED this 16th day of March, 2010.**

_____
**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**

---

[27]  Because the Court has reversed the sanction and remanded for further proceedings, the Court does not address DSDA's objection based on lack of notice of the sanction. (*See* Doc. 53 at 29-31.)

24